UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARZENA POLKOWSKI

V.                                                             D.N.  3:20 cv 253

INLINE PLASTICS CORP.                          FEBRUARY 24, 2020

## COMPLAINT

### I. Parties

1. The Plaintiff, Marzena Polkowski is a resident of Shelton, Connecticut.  She is a member of protected classes as she is 51 years of age (DOB: October 19, 1968) and she is an individual with a disabilities (anxiety, depression, post-traumatic stress disorder ("PTSD")).

2. The Defendant is Inline Plastics, Corp. ("Inline").  Inline is a Corporation doing business in Shelton, Connecticut and employs in excess of 250 employees.  It has a business address at 42 Canal Street, Shelton, Connecticut.

### II. Jurisdiction, Venue and Equitable Relief

3. This action against Inline Plastics Corp. arises under the Age Discrimination in Employment Act as Amended and the Americans with Disabilities Act as Amended.  This Honorable Court has jurisdiction over this action pursuant to the Age Discrimination in Employment

Act As Amended and the Americans with Disabilities Act as amended.  Equitable and other relief is sought under the Age Discrimination in Employment Act as Amended and the American's with Disabilities Act as Amended.

4. The Plaintiff has exhausted the administrative remedies made available to her by filing her claims with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") Case Number 2030012 and the Equal Employment Opportunities Commission ("EEOC") Case Number 16A-2019-01434 and then requesting a release of jurisdiction and having the request granted by way of a "Release of Jurisdiction" from the CCHRO dated January 31, 2020 (attached).

5. Venue is proper in this District and Division pursuant to the Age Discrimination in Employment Act as Amended and the Americans With Disabilities Act as amended because a substantial part of the events giving rise to Plaintiff's claim arose here and one or more of the breaches of which Plaintiff complains occurred here.

**III. Statement of Facts**:

6. The Plaintiff is a 51 year old (DOB: October 19, 1968) female, Caucasian with a disabilities (anxiety, depression and PTSD).

7. The Plaintiff began working for Inline at its Shelton, Connecticut location on September 25, 1989 as a "Packer".  She later became a "Day Shift Supervisor".  She was hired by Inline as a

   Packer. Her last job with Inline was as a Manufacturing Shift Supervisor, a salaried position where she oversaw 35 employees and where she earned $79,000/year.

8. Inline is a company that makes plastic food containers. It employs over 250 employees.

9. Throughout her employment with Inline she was a loyal, hard working employee doing an exemplary job for 29 years. She always went above and beyond to serve the interests of the company.

10. The Plaintiff consistently received raises and above average performance reviews.

11. Beginning in 2016 or 2017, the Defendant, working mostly through new Plant Manager Vanessa Siveyer developed a discriminatory plan to terminate older employees.

12. In 2017, 26 and ½ year employee Peter Kleftogiannis was targeted by Vanessa based on his age. In June, 2017, Mr. Kleftogiannis was demoted by Vanessa in an attempt to get him to quit his employment with Inline because she felt he was too old and did not fit in with a new company "culture". He was falsely accused of having an inappropriate relationship with his ex-wife Victoria Kleftogiannis and falsley accused of having an inappropriate relationship with a co-worker (Monica Marro) in an attempt to get him to quit because of his age and he was then subject to a sham investigation by human resources employee Danielle Chateaune at the request of Vanessa to provide a reason to terminate him based on his age wherein numerous co-workers lied about him. Despite his requests, the lies about him were not

investigated by human resources. He was terminated on September 18, 2017 by way of a phone call from Vanessa Siveyer and Stephen Welford over speaker phone. During the termination phone call, Mr. Welford claimed that Plaintiff was "not the right fit" for the job. He also commented that the claim that the Plaintiff was having an affair with co-worker Monica Marro could not be proved. The reasons given during the termination call were pretextual and defamatory and provided to cover up discriminatory motives. He subsequently filed a complaint of age discrimination with the Connecticut Commission on Human Rights ("CCHRO") on November 14, 2017 and then obtained a release of jurisdiction from the CCHRO on November 9, 2018 and then filed his claims of discrimination in United States District Court for the District of Connecticut (Docket Number 3:18 cv 01975(VAB)) The claim is still pending in District Court.

13. In the beginning of 2018, the Plaintiff complained on an almost daily basis to her supervisor, Rob Reynolds that she was feeling stressed in her position and she asked him for help with the situation. Rob Reynolds took no action to help her.

14. In the beginning of 2018, the Plaintiff also complained to Plant Manager Vanessa Siveyer that she was stressed in her position and she asked more than once to be placed in a different less stressful situation. Siveyer responded by offering her an even more stressful position in

a supervisory position where there were "problems" on the production line. Ms. Siveyer purposely made this offer to attempt to get the Plaintiff to quit employment with the Defendant because Ms. Siveyer wanted to get rid of older employees at the company including the Plaintiff.

15. The Plaintiff complained to human resources employee Danielle Chateanue about the stress she was undergoing in her position and Ms. Chateanue made no effort to help her.

16. Around this time, other employees at Inline were being targeted for termination due to their age. The targeting included employee Peter Kleftogiannis as previously mentioned who had been terminated on September 18, 2017 because of his age.

17. In 2017 and 2018 there was ongoing talk on the shop floor of a "dinosaur list". Multiple employees including, the Plaintiff, Peter Kleftogiannis, Joe Hricz, Jerzy Lasota and Vinny Pierson were all aware of and talked about the "dinosaur list" with the understanding that the Defendant had a plan to terminate older employees.

18. In the spring of 2018 the mental stress the Plaintiff was under in her position at the Defendant continued to increase and neither Rob Reynolds , Danielle Chateneau or Vanessa Siveyer took any action to help her. The Defendant was aware that the Plaintiff did not have any break time and that she was not able to have a lunch break at work due to the demands of her position. The Defendant was aware that employees would follow the Plaintiff into the

bathroom asking her questions while she was trying to relieve herself and the Defendant was aware that Plaintiff wanted a new less stressful position.

19. In July or August of 2018, the Plaintiff suffered her first mental breakdown (an anxiety attack) at work.  She was working in her position as Manufacturing Shift Supervisor.  The Defendant was aware of this mental breakdown and did nothing to help rectify the situation. She was not referred to treatment, she was not given employee assistance and she was not offered the possibility of working in another less stressful position.

20. On September 7, 2018, the Plaintiff suffered her second mental breakdown (an anxiety attack) at work.  She was again working in her position as Manufacturing Shift Supervisor. The mental breakdown was so bad that a co-worker was forced to call an ambulance and she was taken to the emergency room of Griffin Hospital in Derby, Connecticut.

21. After being hospitalized, it was determined by her Doctors Mark Waynick and Laura Thompson that she could not return to work.  Eventually, she was diagnosed with anxiety, depression and PTSD by Doctor Laura Thompson.

22. After suffering her second mental breakdown, the Plaintiff applied for short term disability and leave under the Family and Medical Leave Act.  She was granted leave under the Act.

23. After suffering her second mental breakdown, the Plaintiff was diagnosed with anxiety, depression and PTSD.

24. In early January, 2019, the Plaintiff received a letter dated January 2, 2019 from Becky Goggins, Benefits and Human Resources Manager for the Defendant which stated in part "As of January 13, 2019 you will have exhausted your FMLA benefit.  So that we can make a decision on your employment status, please contact me no later than 5:00 p.m. on January 11, 2019 regarding your intent/ability to return to work.  You can reach me at 203-924-5933 ext. 7066 or via email – bgoggins@inlineplastics.com.  Should you be unable to return to work at this time, your employment will end and you will be offered the opportunity to elect medical coverage through the COBRA option or the Healthcare Exchange.  This information will be send to your home address by the plan administrator, Accrue Solutions."

25. Prior to January 11, 2019, the Plaintiff sent Becky Goggins a letter that stated; "Dear Becky, I went to see the doctor on January 4, 2019 and I received another doctor's excuse until the next visit on January 31, 2019 for re-evaluation, assessment and treatment.  As of January 13, 2019 I won't be ready to come back to work to my previous position.  Based on my long term relationship with Inline Plastics, being employed for 29 years, I'm asking about any possibility of keeping my health insurance with you until I feel better.  Hopefully it will happen soon because there has been some improvement with my condition.  I would like to still be employed with Inline Plastics and come back to work as soon as my doctor allows me to.  I am prepared for any available position excluding floor work as the heavy noise worsens

my condition. Staying employed with Inline Plastics, even if that's only part time, would greatly help me and my family financially. Hopefully my experience, knowledge of the production process and long time relationship with Inline Plastics and its employees will help you make a positive decision. Please share this letter with upper management and President Tom Orkisz. Thank you, Marzena Polkowski.

26. On January 11, 2019, the Plaintiff was discriminatorily terminated from her position on the basis of her age and her disability.

27. On or about, January 7, 2019, the Plaintiff asked Becky Goggins if she would be able to return to work at the Defendant. She was told simply by Becky Goggins that she could reapply online if she wished she was also told by Becky Goggins that she would lose all of her benefits and any seniority were she to be successful in obtaining a new position.

28. In March, 2019, the Plaintiff applied for an extension of short term disability benefits. On March 26, 2019, the Plaintiff received a letter from the Defendant denying benefits.

29. In late March, 2019, the Plaintiff received correspondence from Malinda Franks, Senior Benefit Claims Specialist at Mutual of Omaha (the Defendant's short term and long term disability benefits insurance company). The correspondence stated in part; "We have completed our review of your claim for ongoing Disability benefits under Program GUSI-BARW9. Based on our review, we have determined we are unable to approve benefits

beyond February 01, 2019, and your claim has been denied beyond February 01, 2019. . . . In summary, the documentation does not demonstrate global impairments of psychiatric function, limited ability to sustain focus and concentration and limited ability to effectively interact.  Therefore, benefits are no longer payable, and your claim has been denied for further benefits beyond February 01, 2019.  If you disagree with our determination and wish to appeal this claim decision, you or your authorized representative must submit to your employer a written request to appeal within 180 days of the date you receive this notice of denial to address listed below.  Inline Plastics Corp. Attention: 42 Canal Street, Shelton, CT 06484 . . ."

30. On September 10, 2019, the Plaintiff wrote to Inline Plastics Corp. disagreeing with Mutual of Omaha's denial and asking the Defendant to reconsider the decision.   The Defendant did not respond.

31. Prior to September 10, 2019, the Plaintiff's husband Mark Polkowski spoke with Malinda Franks of Mutual of Omaha over the phone and she told Mr. Polkowski that it was the Defendant's prerogative whether or not to allow an extension of the Plaintiff's disability benefits.

32. The Defendant, through employee Becky Goggins has refused to allow the Plaintiff to continue disability benefits in continuing to discriminate against the Plaintiff on the basis of her disability and age.

33. The Defendant also had the discretion to allow the Plaintiff an extended leave of absence to allow her time to return to her employment and did not allow her extended leave in discrimination against her on the basis of her disability and age.

34. The Defendant also had the discretion to allow the Plaintiff to return to work with full seniority and full accrued benefits but chose to communicate to her that if she were to return to work she would not have any seniority or any accrued benefits thereby continuing to discriminate against her on the basis of her age and disability.

35. At a certain point after the Plaintiff in this case and Peter Kleftogiannis had filed their claims of discrimination, Vanessa Siveyer was moved out of state by the Defendant in order to make it more difficult for her to testify in the discrimination cases filed by the Plaintiff and Peter Kleftogiannnis.

36. As part of her CHRO case, the Plaintiff called Vanessa Sirveyer as a witness to testify before the CCHRO at a fact finding hearing on Thursday, January 30, 2020 but the Defendant did not produce Ms. Siveyer as a witness.

37. Becky Goggins testified at the January 30, 2020 fact finding that the Defendant had the ability to continue the Plaintiff's leave of absence after January 11, 2020 but did not.

38. The only reason the Defendant did not continue on its plan to terminate older employees of the Defendant was that the Plaintiff and Peter Kleftogiannis had filed discrimination claims against the Defendant both alleging the existence of a "dinosaur list".  The Defendant did not continue with its discriminatory plan because it was concerned about additional claims of age discrimination being filed against it were it to continue the age discrimination against employees.

**IV. Count One: Violation of the Age Discrimination in Employment Act as Amended, 29 U.S.C. Sections 621 et seq.**

39. The Defendant violated the Age Discrimination in Employment Act as Amended, 29 U.S.C. Sections 621 et seq. by discriminating against the Plaintiff on the basis of his age.

**V. Count Two: Violation of Connecticut General Statutes Section 46a-60**:

40. The Defendant violated the provisions of Connecticut General Statutes Section 46a-60 by discriminating against the Plaintiff on account of the Plaintiff's age.

**VII. Count Three: Violation of the American's With Disabilities Act as Amended, 42 U.S.C. Sections 12101 et seq.:**

41. The Defendant violated the provisions of the American's With Disabilities Act as Amended 42 U.S.C. Sections 12101 et seq. by discriminating against the Plaintiff on the basis of her disabilities.

**VIII. Count Four: Violation of Connecticut General Statutes Section 46a-60:**

42. The Defendant violated the Connecticut General Statutes Section 46a-60 by discriminating against the Plaintiff on the basis of her disabilities.

**IX. Count Five: Negligent Infliction of Emotional Distress:**

43. The Defendant's negligent conduct in discriminating against the Plaintiff involved an unreasonable risk of causing the Plaintiff emotional distress that might result in bodily harm.
44. The conduct took place in the termination process.
45. Plaintiff did in fact suffer severe emotional distress.

46. Plaintiff's emotional distress was foreseeable by the Defendant.

47. Plaintiff's emotional distress was severe enough that it resulted in both illness and bodily harm.

48. The Defendant's conduct was the cause of the Plaintiff's severe emotional distress and the Plaintiff suffered substantial damages as a result.

**X. Damages/Prayer for Relief**:

49. As a result of Defendants unequal treatment and discriminatory treatment of the Plaintiff and defamation of the Plaintiff, the Plaintiff has suffered financial and emotionally. Her career path has been forever altered negatively and she has lost opportunities for employment and she has suffered emotional distress as a result of the intentional discrimination and negligent conduct.

50. As to all Counts, the Plaintiff prays for the following:

   a. Compensatory Damages;

   b. Emotional Distress Damages;

   c. Economic Damages;

   d. Equitable Damages;

   e. Attorney's Fees and Costs;

f. Punitive Damages;

g. All Other Damages Available.

THE PLAINTIFF:

By: ___/s/ Daniel H. Kryzanski ct 15620
        Daniel H. Kryzanski, Esq.
        Law Offices of Daniel H. Kryzanski
        30 Ferry Blvd. #2
        Stratford, CT 06615
        Phone: (203) 380-1384
        Fax: (203) 380-1598
        Bar: CT 15620